Tuheey, J,
delivered the opinion of the court.
Complainant leased a forge and furnace for a term of years to Anderson, Steel and Collier, taking from them a covenant to return the forge and the furnace at the expiration of the lease in good repair; shortly after the lease Anderson withdrew from the firm, and Steel and Collier, not long afterwards, dissolved the .partnership, and by mutual agreement Collier took the forge and Steel the furnace for the residue of the term. At the expiration of the lease Collier delivered up the forge in good repair, and Steel the furnace in a ruinous and dilapidated condition. Complainant brought his action on the covenant to return the works in good repair against Steel, and upon a trial at law, he and his counsel being desirous to have the benefit of the testimony of Collier, and believing that it would not be allowed them without a release from complainant of all right to hold him responsible upon the covenant, one was prepared and executed. Immediately upon the delivery of the release to Collier, the attornies of Steel applied to the court for leave to *149 plead the release siiice the last continuance in discharge of him, which was allowed; and this bill is filed to restrain Steel from setting up the defence, it being inequitable and unconscientious, it is said, in him to do so. It is now argued that Steel was not injured by the release; that in as much as he and Collier had dissolved partnership, and he had taken sole possession of the furnace, he was legally bound to hold Collier harmless from any loss he might sustain by reason of the furnace not having been returned in good repair; that being so bound, he would have no right to contribution from Collier for any damages he might individually pay for any breach of the covenant, to return in good repair, and, therefore, cannot complain of the execution of the release to Collier, and ought not to be permitted to set it up in his defence. That Steel was bound, as between himself and Collier, to pay individually, any damage that might be recovered for a breach of the covenant, in not returning the furnace in good repair, and that, therefore, Collier could have, in all probability, been examined as a witness without a release,'is certainly true. -It is equally true, that Steel in setting up the release in his own discharge, is availing himself of a defence, to say the least of it, of very doubtful propriety; yet, still, we have looked in vain for a place to stand upon, in an attempt to restrain him from its use. There is no principle of chancery jurisdiction, that we are ,aware of, warranting such a proceeding. It has been attempted by the counsel of the complainant to sustain the jurisdiction of the court, upon the ground that the release was hastily and improvidently made; but even if the principle, which runs through a class of cases upon the subject of hasty and improvident contracts, could be made to apply to a case of this kind, yet, upon an examination of the authorities upon the subject, we are satisfied that the complainant has not brought himself within their operation. It is a well known maxim, that ignorance of law will not furnish an excuse for any person, either for a breach or omission of duty: and Mr. Story in commenting upon this principle, in the 1st vol. of his equity jurisprudence, sec. 111, says, “The “ presumption is, that every person is acquainted with his own “ rights, provided he has had a reasonable opportunity to know “ them, and nothing can be more liable to abuse, than to permit a “person to reclaim his property, upon his mere pretence, that at the “ time of parting with it he was ignorant of the law acting on his “ title.” Mr. Fonblanque accordingly lays it down, as a general *150 proposition, that “ignorance of law shall not affect agreements, no? “ excuse from the legal consequences of particular acts in a court of “ chancery:” and he is fully borne out by the authorities. And in the 112th section of the same book, he says, “One of the most common “cases put to illustrate the doctrine is when two are bound by a “bond, and the obligee releases one, supposing by mistake of law “ that the other will remain bound. In such a case, the obligee will “ not be relieved in equity upon the mere ground of his mistake of “law, for there is nothing inequitable, in the co-obligor’s availing “ himself of his legal rights; nor of the other obligor’s insisting upon “ his release, if they have acted bona Jide, and there has been no “ fraud on either side to procure the release.” The authorities cited for the support of this proposition are, Comyn’s Dig. Chan. 3, F. 8; 4th Viner’s Abr. 387: 1st Fonblanque’s Eq. B. 1st, ch. 2, sec. 7, note(v): 1st Peters’, 17: 1st P. Will. 723-27: 2d Atkins’, 591: 2d John. Chan. Rep. 51: 4th Pickering, 6, 17. This seems tobe the very case now under consideration. But further. It is true, that there are some exceptions to the generality of the rule as laid down by Mr. Fonblanque in his equity treatise; but what are they? Mr. Story in the 120th section of his work upon equity jurisprudence, vol. 1st, says, “That upon a close examination of the cases “ that have been relieved against, when the party knowing all the “facts, have acted upon a mistake of the law, many, though not “ all, will be found to have turned, not upon the consideration of “ a mere mistake of the law, stripped of all other circumstances, but “ upon an admixture of other ingredients, going to establish misre- “ presentation, imposition, undue influence, undue confidence, men- “ tal imbecility,”. &c. Again, he says in sec. 137, same book. “We have thus gone over the principal cases, which are supposed to contain contradictions of, or exceptions to the general rule, that ignorance of the law, with a full knowledge of the facts, furnishes no ground to rescind agreements, or to set aside the solemn acts of the parties. Without undertaking to assert, that there are none of these cases which are inconsistent with the rule, it may be affirmed, that the real exceptions are few, and generally stand upon some. very cogent pressure of circumstances. The rule prevails in England in all cases of compromise of doubtful, and, perhaps, in all cases of doubted rights, and, especially, in all cases of family arrangements. It is relaxed in cases, when there is a total ignorance of title founded in the mistake of a plain and settled *151 principle of law, and in cases of imposition, misrepresentation, undue influence, misplaced confidence and surprise. In America the general rule has been recognised as founded in sound wisdom and policy, fit to he upheld with a steady confidence. And hitherto the exceptions to it, (if any,) will be found, not to rest upon the mere foundation of a naked mistake of law, however plain and settled the principle may be, nor upon the mere ignorance of title founded upon such mistake.” It will at once he seen from the cursory examination of this question, that there has been no principle adjudged by which complainant can be released. The deed of release was freely and voluntarily executed; it was done in open court, and by the direction of legal counsel; to give the relief would be to make an exception ourselves, to the important rule we have been investigating, startling to the mind, and perhaps in its tendency of the most dangerous consequences; we cannot think of doing it.
The decree of the chancellor, dismissing the bill, will therefore be affirmed.